**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANAM RAHMAN PETIT,[1]<br><br>　　Plaintiff,<br><br>　　v.<br><br>TODD BLANCHE<br>in his official capacity as<br>Acting Attorney General<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>and<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE,<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>　　Defendants. | No. 26-CV-_____<br><br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

### INTRODUCTION

1.　　The federal government has asserted a constitutional right to discriminate against federal employees, including the plaintiff in this case, Anam Rahman Petit. That bizarre result is as wrong as it sounds, and this Court's intervention is urgently needed.

2.　　Ms. Petit, an immigrant, South Asian woman of Pakistani origin, graduated from the George Washington University School of Law in 2012. Since that time, she has practiced

---

[1]　Pursuant to Local Civil Rule 5.1(c)(1), the Plaintiff's residential address is being filed under seal with the Court in a separate Notice of Filing.

immigration law, primarily representing low-income persons of color. She has also volunteered and provided pro bono services through organizations that offer low-cost or free legal services to immigrants and noncitizens and is well-respected for her advocacy work. Ms. Petit served on the board of one such organization, AsylumWorks, from 2018–2023 and served as the Chair of the American Immigration Lawyers Association Washington Executive Office for Immigration Review (EOIR) Liaison Committee from 2022–2023.

3.      Although Ms. Petit loved private practice, she dreamed of serving her country as a United States Immigration Judge. Her dream was realized when she was appointed to be an Immigration Judge within the Department of Justice's Executive Office for Immigration Review at the Annandale Immigration Court in 2023.

4.      Beginning in September 2023, Ms. Petit served her country with the utmost integrity, dedication, and competency. She performed the duties of her office exceptionally well because of her decade of experience in immigration law, and because of her commitment to ensuring fairness and due process for every person who appeared before her. Her performance reviews reflected her excellent performance.

5.      Despite her stellar performance as an Immigration Judge, the Department of Justice (DOJ) abruptly terminated Ms. Petit within a few months after the new Administration took office in January 2025 and just days before she was to be converted to a permanent position.

6.      The DOJ terminated Ms. Petit because of her sex, race, and national origin in violation of Title VII of the Civil Rights Act of 1964 (Title VII) 42 U.S.C. §§ 2000e *et seq.*, and because of her political affiliation and prior associations in violation of the First Amendment.

7.      Ms. Petit filed a formal discrimination complaint against DOJ challenging her termination. Instead of investigating and adjudicating her complaint, DOJ's Equal Employment

2

Opportunity Office issued a final agency decision dismissing it. DOJ asserted that Title VII does not prohibit discriminatory dismissal against Immigration Judges because the statute purportedly conflicts with the President's Article II removal power.

8.      To this day, DOJ has not provided a legitimate non-discriminatory justification for Ms. Petit's termination. DOJ has said only that Ms. Petit was an "at-will" employee whose "removal is beyond the purview of Title VII, the PWFA, or any executive order pertaining to parental status."

9.      This is incorrect. Under long-standing Supreme Court precedent, Congress has the authority to pass laws regulating the civil service. Congress made Title VII's critical protections against discrimination based on race, color, religion, sex, or national origin applicable to the federal workforce in 1972 with the Equal Employment Opportunity Act. Nothing in the Constitution gives the Executive Branch the right to discriminate in violation of the Civil Rights Act. Moreover, the Supreme Court has made clear that the Constitution itself forbids the government from discriminating, including because of an employee's partisan affiliation, which violates the First Amendment. As a result of Congress's actions, the professional federal civil service today is composed of Americans of every possible background, demographic, and creed, all united in common service to the people of the United States.

10.      In this case and others like it, the current Administration has taken direct aim at the foundational principles that undergird the federal civil service. The DOJ's final agency decision in this case concluded that Title VII's prohibition of discrimination in the federal workforce conflicts with the President's inherent Article II authority to oversee the Executive Branch and thus cannot apply. At base, the Government's legal theory is that the President has a constitutional right to discriminate against federal workers. This is false.

3

11.     The Government's theory reflects an unprecedented assault against the civil service laws that have long protected federal employees. If the Government prevails in transforming the law, it will gut the professional, non-partisan civil service as we know it, ending civil rights protections for millions of federal employees. If accepted, this theory would permit the Government to fire federal workers based on race, sex, religion, national origin, or political affiliation with impunity. Such a result would fundamentally undermine the civil service system that has protected American democracy for over a century. The Court should reject the invitation to return the federal workforce to the worst days of the patronage system.

12.     Because the Government refused to rectify its discrimination against Ms. Petit, she has nowhere else to turn but this Court. Ms. Petit therefore respectfully requests that this Court order complete relief, including a declaration that the Government violated her rights, reinstatement, an order rescinding her termination, an award of front pay and backpay, a writ of mandamus, and compensatory damages.

**PARTIES**

13.     Plaintiff Anam Rahman Petit is an adult resident and citizen of Maryland. Ms. Petit was a United States Immigration Judge at the Annandale Immigration Court, Executive Office for Immigration Review in Virginia until her unlawful firing on September 9, 2025.

14.     Defendant Todd Blanche is the Acting Attorney General of the United States and the head of the Defendant United States Department of Justice. He is sued in his official capacity.

15.     Defendant United States Department of Justice (DOJ or the Agency) is the agency that formerly employed Plaintiff.

4

**JURISDICTION AND VENUE**

16.    This Court has jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and the laws of the United States. Jurisdiction is also proper under 5 U.S.C. § 2000e-5(f)(3).

17.    Venue is proper in this district under 5 U.S.C. § 2000e-5(f)(3) because the discriminatory removal was undertaken in the District of Columbia and because employment records relevant to that discriminatory removal are maintained in the District of Columbia.

18.    Venue is proper in this district under 28 U.S.C § 1391 because Defendants reside in the District of Columbia and because a substantial part of the events occurred in the District of Columbia.

19.    Plaintiff exhausted her administrative remedies prior to bringing this suit. On September 25, 2025, Ms. Petit timely initiated contact with Defendant DOJ's Equal Employment Opportunity (EEO) office. The EEO office issued a Notice of Final Interview and Right to File a Complaint of Discrimination on November 24, 2025. Ms. Petit then timely filed a Formal Complaint of Discrimination with the EEO office on December 4, 2025. Fewer than ninety days have elapsed since the EEO office issued a Final Agency Decision dismissing her complaint on May 11, 2026.

**FACTS GIVING RISE TO RELIEF**

20.    Anam Rahman Petit is a South Asian woman of Pakistani origin with dual citizenship in the United States and New Zealand. She immigrated with her family from New Zealand to the United States when she was 8 years old. Her parents immigrated from Pakistan to New Zealand before Ms. Petit was born.

5

21.     Ms. Petit was appointed to serve as an Immigration Judge (IJ) with DOJ, Executive Office for Immigration Review (EOIR), Annandale Immigration Court starting on September 10, 2023.

22.     Prior to her appointment at EOIR, Ms. Petit spent her entire career practicing immigration law and representing noncitizens before EOIR; U.S. Citizenship and Immigration Services, Department of Homeland Security; the Department of State; and federal and state courts. During that time, Ms. Petit also volunteered with and provided pro bono legal services through the American Immigration Lawyers Association, AsylumWorks, Ayuda, Center for Immigration Rights Coalition, Catholic Charities, HIAS, DC Affordable Law Firm, and the DC Bar Pro Bono Center, representing mostly low-income persons of color, including many Hispanic and Latin American immigrants and noncitizens.

23.     Ms. Petit's extensive volunteer and pro bono experiences advocating for immigrants, which were highlighted in her application to become an IJ, included significant leadership roles such as her service as a Board Member for AsylumWorks from 2018–2023 and the Chair of the American Immigration Lawyers Association Washington EOIR Liaison Committee from 2022–2023.

24.     In addition to her legal practice, Ms. Petit served as an Adjunct Professor of Law at Georgetown University Law Center from 2018–2023, co-teaching the Gender and Immigration fieldwork practicum and supervising law students' work representing immigrant women fleeing their countries due to gender-based violence or seeking protection from domestic violence in the United States.

25.     Ms. Petit is a registered voter with the Democratic Party.

26.     EOIR management knew of Ms. Petit's race and gender at the time of her appointment, as they were documented in her employment file.

27.     EOIR management knew of Ms. Petit's ethnicity at the time of her appointment, as she disclosed her Pakistani origin during her background check and provided information about her family members who were born in Pakistan or still lived in Pakistan.

28.     EOIR management also knew of Ms. Petit's background in private practice representing noncitizens, her volunteering with organizations that provide low-cost or free services to immigrants, her history of advocating for immigrants, her teaching experience, and her close affiliation with individuals of various national origins because it was included in the resume and Quality Ranking Factors she submitted with her application to serve as an IJ and summarized in EOIR's November 7, 2023, Appointment Announcement.

29.     Pursuant to DOJ policy and practice, upon appointment, Immigration Judges initially serve a two-year term. After completing the two-year term, their appointments are routinely converted to permanent positions.

30.     Throughout her employment as an Immigration Judge, Ms. Petit exceeded all performance standards. Her docket reflected high case completion numbers and a consistent commitment to fair, due-process-centered hearings. In 2025, Ms. Petit had completed around 800 cases by the time she was terminated in September, approximately one hundred cases higher than the 700 cases a year expected of immigration judges.

31.     Ms. Petit's supervisors often commended her performance, efficiency, and work ethic. Ms. Petit was given the extra responsibility of serving as the back-up juvenile judge for both detained and non-detained juveniles at Annandale in addition to her own docket. She also consistently received positive performance feedback from attorney advisors and other IJs.

32.     At no time during her service as an Immigration Judge did the Agency ever issue Ms. Petit any form of discipline or counseling, formal or informal.

33.     Despite her excellent performance during her nearly two years of service, EOIR notified Ms. Petit on September 5, 2025, that the Attorney General had decided to terminate her appointment, effective September 9, 2025.

34.     From September 5, 2025, through September 9, 2025, EOIR placed Ms. Petit on administrative leave.

35.     On September 6, 2026, Ms. Petit's direct supervisor, Assistant Chief Immigration Judge (ACIJ) Eric Dillow, called her and said that he had written her a glowing review, which had also included all of the positive performance feedback he had received from Ms. Petit's colleagues, and that there was no performance-based reason for her termination.

36.     ACIJ Dillow told Ms. Petit that he did not know why she was being terminated and that he had not recommended it. He stated that he did not understand DOJ's decision to terminate Ms. Petit specifically because EOIR needed immigration judges like her.

37.     At no point has DOJ claimed that Ms. Petit was terminated because of misconduct, poor performance, or any other articulable non-discriminatory justification.

38.     At the time of termination, Ms. Petit received a brief termination letter signed by then-Acting Director of EOIR Sirce Owen. The letter did not provide any justification for her termination other than to state that "[p]ursuant to Article II of the Constitution, the Attorney General has decided not to extend your term or convert it to a permanent appointment."

39.     Upon information and belief, senior DOJ officials were aware of Ms. Petit's protected characteristics and political background at the time the termination decision was made, as those facts were included in her employment file.

8

40.     Ms. Petit's non-conversion and termination followed then-Attorney General Pamela Bondi's and then-Acting Director Sirce Owen's issuance of numerous, department-wide memoranda announcing the end to Diversity, Equity, and Inclusion (DEI) efforts.

41.     In January and February 2025, then-Acting Director Owen issued a series of policy memoranda that were hostile toward noncitizens and noncitizen advocacy. This hostility was pervasive in the Trump Administration—senior leadership, including Deputy Chief of Staff for Policy and Homeland Security Advisor Stephen Miller and then-Attorney General Bondi, have publicly accused immigrant advocacy organizations and lawyers representing noncitizens of committing immigration fraud and labeled them extremists aligned with domestic terrorism.

42.     Other memoranda issued by then-Acting Director Owen in February and March 2025 criticized the appointment practices of the prior Administration, particularly with respect to Immigration Judges serving temporary appointments. The memoranda stated that the Agency had reviewed the hiring materials of any Immigration Judge hired under the prior Administration and alleged that applicants of "certain backgrounds" and "applicants who [had] represented the government" faced "unfounded hostility" and were given unfavorable treatment due to their background or the "ideological or partisan preferences of the interviewer." One memorandum concluded that EOIR was "committed to rectifying those harms." Another memorandum issued by then-Attorney General Bondi in February 2025 promised to "eliminate[] and penalize illegal DEI and DEIA preferences."

43.     Coinciding with these memoranda and despite Defendant DOJ's FY2026 budget permitting up to 800 Immigration Judges, EOIR terminated a disproportionate number of women, people of color, ethnic minorities, members of organizations affiliated with disfavored groups, including immigrants' rights organizations, and persons associated therewith.

44.     Around the time Defendants terminated Ms. Petit, Defendants hired or retained white male Immigration Judges who were not associated with disfavored groups, such as immigrants' rights organizations or Hispanic and/or Latin American immigrants or noncitizens.

45.     For example, EOIR converted the two white male IJs at Annandale Immigration Court, David A. Gardey and Robert K. Lundberg, to permanent positions.

46.     David A. Gardey has a background as a federal prosecutor, and upon information and belief, is not associated with any immigrants' rights organizations or Hispanic and/or Latin American immigrants or noncitizens.

47.     Robert K. Lundberg has a background practicing exclusively prosecutorial and enforcement-side immigration law, and upon information and belief, is not associated with any immigrants' rights organizations or Hispanic and/or Latin American immigrants or noncitizens.

48.     Around the time Defendants terminated Ms. Petit, Defendants terminated or non-converted two other female IJs at Annandale Immigration Court, Jamie B. Perry and Nicole C. Lomartire.

49.     Jamie B. Perry worked as an attorney advisor with the Office on Violence Against Women, DOJ, and in multiple roles as a federal prosecutor before serving as an IJ.

50.     Nicole C. Lomartire served in multiple roles within the Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement, Department of Homeland Security and as a state prosecutor before serving as an IJ.

51.     Around the time Defendants terminated Ms. Petit, the Trump administration issued a rule that lowered the qualification requirements for temporary Immigration Judges, which allowed Defendants to hire attorneys without adjudicatory or immigration law experience.

52.    Around the time Defendants terminated Ms. Petit, EOIR hired three new temporary IJs, all white males, that were scheduled to start at the Annandale Immigration Court in October 2025: Bryan M. Davis, Christopher R. Day, and Jason R. Smith.

53.    Bryan M. Davis has been on active duty in the U.S. Navy since graduating from law school and served as the deputy director for Criminal Law Policy in the Office of the Judge Advocate General, Washington, D.C., before his appointment. Upon information and belief, he is not associated with any immigrants' rights organizations or Hispanic and/or Latin American immigrants or noncitizens.

54.    Christopher R. Day is a lieutenant colonel in the U.S. Army Reserve Judge Advocate General's Corps and served as an associate general counsel with the Office of General Counsel at the Federal Communications Commission before his appointment. Upon information and belief, he is not associated with any immigrants' rights organizations or Hispanic and/or Latin American immigrants or noncitizens.

55.    Jason R. Smith has a background working for the Department of Defense in various litigation roles, and upon information and belief, is not associated with any immigrants' rights organizations or Hispanic and/or Latin American immigrants or noncitizens.

56.    Upon information and belief, the Immigration Judges not converted to permanent positions or terminated in and around the same time as Plaintiff were overwhelmingly female, including: Jamie B. Perry and Nicole C. Lomartire of the Annandale Immigration Court; Lucy Billings of the New York - Varick Immigration Court; Carmen Maria Rey Caldas of the New York - Federal Plaza Immigration Court; Chloe Dillon of the San Francisco Immigration Court; Jenna Peyton of the Chicago Immigration Court; Jennifer Durkin of the New York - Varick Immigration Court; Kyra Lilien of the Concord Immigration Court; Jody Barilla of the Chicago Immigration

Court; Zahra Jivani Fenelon of the Houston Immigration Court; Ila Deiss of the San Francisco Immigration Court; Tania Nemer of the Cleveland Immigration Court; Irma Pérez of the West Los Angeles Immigration Court; Sarah Torres of the Concord Immigration Court; Roberta Wilson of the Concord Immigration Court; Arwen Swink of the San Francisco Immigration Court; Shuting Chen of the San Francisco Immigration Court; Windy P. Wedderburn of the New York – Varick Immigration Court; Allison Daw of the Sacramento Immigration Court; Davené Walker of the Hyattsville Immigration Court; Sondra J. Miller-Wein of the Hyattsville Immigration Court; Elizabeth Kohler Maya of the Baltimore Immigration Court; Florence A. Chamberlin of the San Francisco Immigration Court; Dianna Michelle Martinez Soler of the New York - Broadway Immigration Court; and Susana Reyes of the Seattle Immigration Court.

57.    Several of the Immigration Judges and Appellate Immigration Judges who were not converted to permanent positions and/or who were terminated around the time of Plaintiff's removal had backgrounds advocating for immigrants and immigrant rights prior to the time they were hired by Defendant DOJ, including Irma Pérez of the West Los Angeles Immigration Court; Christopher McNary of the Santa Ana Immigration Court; Sameer Ahmed of the Boston Immigration Court; Carla I. Espinoza of the Chicago Immigration Court; Lucy Billings of the New York - Varick Immigration Court; BIA Judge Homero López; George Pappas of the Boston Immigration Court; Arwen Swink of the San Francisco Immigration Court; Roberta Wilson of the Concord Immigration Court; Sarah Torres of the Concord Immigration Court; Shuting Chen of the San Francisco Immigration Court; Kyra Lilien of the Concord Immigration Court; Windy P. Wedderburn of the New York – Varick Immigration Court; Rohit Khanna of the Miami Immigration Court; Sondra J. Miller-Wein of the Hyattsville Immigration Court; Elizabeth Kohler Maya of the Baltimore Immigration Court; Florence A. Chamberlin of the San Francisco

12

Immigration Court; Enrique A. Holguin of the El Paso Immigration Court; and Susana Reyes of the Seattle Immigration Court.

58.    In sharp contrast, several Immigration Judges and Appellate Immigration Judges with exclusively prosecutorial immigration law backgrounds or who otherwise had never represented or advocated for immigrants and noncitizens were converted to permanent positions around the time of Plaintiff's termination, including Robert Lundberg of the Annandale Immigration Court; David A. Gardey of the Annandale Immigration Court; Jason Lawrence Stern of the Houston - Greenspoint Park Immigration Court; Tyler Wood of the Denver Immigration Court; Patrick P. Burke of the Cleveland Immigration Court; Anna K. Diao of the New York - Broadway Immigration Court; Kalin Mittleider Ivany of the Fort Snelling Immigration Court; Dennis James Ryan Jr. of the Newark Immigration Court; Veronica M. Segovia of the Pearsall Immigration Court; Natalie Ellen Smith of the Boston Immigration Court; and Kevin Terrill of the Pearsall Immigration Court.

59.    Defendants' decision to terminate Plaintiff was motivated in whole or in part by her sex (female), race and national origin (Asian, Pakistani), political affiliation, and/or association with immigrant groups.

60.    Despite Ms. Petit filing a formal complaint with DOJ's EEO office on December 4, 2025, the EEO office did not complete the investigation as required by EEOC regulations. Instead, on May 11, 2025, the Department's EEO office issued a final agency decision dismissing her complaint.

61.    According to the final agency decision, Ms. Petit's termination:

> was a lawful exercise of the Attorney General's authority under Article II of the Constitution. Article II of the Constitution allows the President and heads of departments exercising his power to remove inferior officers without cause, subject to only narrow exceptions that do not apply to your

13

former position. No statute provides otherwise, and even if it did, the statute would run afoul of Article II.

62.     The final agency decision also stated that Ms. Petit's "status as an inferior officer under Article II of the Constitution renders [her] as an 'at-will' employee," making her removal "beyond the purview Title VII, the PWFA, or any executive order pertaining to parental status."

63.     Ms. Petit has suffered significant harm because of Defendants' discriminatory actions, including loss of income, damage to her professional reputation in the legal community, emotional distress, and the derailment of her career. The abrupt and public nature of her termination made it difficult for her to obtain comparable employment and has caused ongoing reputational harm in the local Washington, D.C., legal community where she practiced for over a decade.

## COUNT I

**Discrimination Based on Sex in Violation of Title VII of the Civil Rights Act of 1964**

64.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1–63 of this Complaint.

65.     Ms. Petit was terminated because of her sex (female) in violation of Title VII.

66.     The two Immigration Judges in the Annandale Immigration Court who were not terminated, but instead were converted to permanent positions in September 2025, were male.

67.     These two male Immigration Judges had substantially similar roles and responsibilities to Ms. Petit.

68.     Defendants terminated two other Immigration Judges at Annadale Immigration Court around the time of Ms. Petit's termination, both of whom were also female.

69.     Defendants have not provided a legitimate non-discriminatory reason for this targeted removal of the female immigration judges at Annandale Immigration Court.

14

70. On October 24, 2025, EOIR announced that it had hired 11 new permanent Immigration Judges. All of them are male.

71. As described above, EOIR has disproportionately fired female immigration judges.

72. Ms. Petit fully exhausted her claims in the EEO process and is entitled to bring this action in this Court.

73. As a direct and proximate result of the unlawful acts of Defendants, Ms. Petit suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress.

## COUNT II

**Discrimination Based on Race in Violation of Title VII of the Civil Rights Act of 1964**

74. Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1–73 of this Complaint.

75. Ms. Petit was terminated because of her race (Asian) in violation of Title VII.

76. The two Immigration Judges in the Annandale Immigration Court who were not terminated, but instead were converted to permanent positions in September 2025, were not Asian.

77. These two non-Asian Immigration Judges had substantially similar roles and responsibilities to Ms. Petit.

78. Defendants have not provided a legitimate non-discriminatory reason for this targeted removal of Asian immigration judges at Annandale Immigration Court.

79. Ms. Petit fully exhausted her claims in the EEO process and is entitled to bring this action in this Court.

80.    As a direct and proximate result of the unlawful acts of Defendants, Ms. Petit suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress.

## COUNT III

### Discrimination Based on National Origin in Violation of Title VII of the Civil Rights Act of 1964

81.    Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1–80 of this Complaint.

82.    Ms. Petit was terminated because of her national origin in violation of Title VII. Ms. Petit has Pakistani national origins.

83.    The two Immigration Judges in the Annandale Immigration Court who were not terminated, but instead were converted to permanent positions in September 2025, are not of Pakistani origin.

84.    These two non-Pakistani Immigration Judges had substantially similar roles and responsibilities to Ms. Petit.

85.    Ms. Petit was one of 39 immigration judges hired as part of a class of similarly situated individuals. Upon information and belief, she is the only member of the class who is of Pakistani national origin and one of two who are prominently known to be of South Asian origin. Defendants also terminated Rohit Khanna, the other South Asian Immigration Judge hired at that time.

86.    On October 24, 2025, EOIR announced that it had hired 11 new permanent Immigration Judges. Upon information and belief, none of them are of Pakistani origin.

87.    Defendants have not provided a legitimate non-discriminatory reason for the removal of the only Pakistani probationary judge, and both South Asian judges, in the class.

16

88. Ms. Petit fully exhausted her claims in the EEO process and is entitled to bring this action in this Court.

89. As a direct and proximate result of the unlawful acts of Defendants, Ms. Petit suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress.

## COUNT IV

**Discrimination in Violation of the First Amendment of the United States Constitution**

90. Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1–89 of this Complaint.

91. Ms. Petit was terminated because of her past association with organizations affiliated with political ideologies contrary to Defendants', such as immigrants' rights organizations and the Democratic Party, in violation of the First Amendment of the U.S. Constitution.

92. Ms. Petit's immigrant and noncitizen advocacy and political affiliation was well-known throughout EOIR, and was thoroughly documented in her employment file, which would have been reviewed prior to her termination.

93. Defendants have never provided a justification for their targeted removal of an Immigration Judge who prominently engaged in immigrant and noncitizen advocacy and had a well-known partisan affiliation.

94. Defendants have consistently targeted other immigration judges affiliated with political ideologies contrary to Defendants', such as immigrants' rights organizations and the Democratic Party.

17

## COUNT V

### Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202

95.    Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1–94 of this Complaint.

96.    Ms. Petit is entitled to declaratory relief on the basis of all claims identified. There is a substantial ongoing controversy between Ms. Petit and the Defendants. A declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Defendants did not have authority to remove Ms. Petit on the basis of her national origin, race, sex, prior association, and partisan affiliation.

## COUNT IV

### Mandamus

97.    Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1–96 of this Complaint.

98.    In the alternative, Ms. Petit is entitled to a writ of mandamus or relief in the nature of mandamus commanding Defendants to return her to her office.

99.    Title VII and the First Amendment impose a ministerial duty on Defendants not to discriminate on the basis of sex, national origin, race, prior association, or partisan affiliation. Ms. Petit is entitled to a writ of mandamus returning her to her office.

100.    Absent this Court granting another form of relief, there is no other adequate means of redress.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, the premises considered, Plaintiff respectfully prays that this Honorable

Court:

A.  Declare that Defendants' actions violated Plaintiff's rights under Title VII to be free from unlawful discrimination and retaliation, and Plaintiff's rights under the First Amendment;

B.  Reinstate Plaintiff to her previous position;

C.  Award Plaintiff full back pay and benefits and interest;

D.  Award Plaintiff front pay;

E.  Award compensatory damages for emotional pain, suffering inconvenience, mental anguish, personal indignity, and other pecuniary and non-pecuniary losses in an amount to be determined by the jury by trial in excess of $10,000;

F.  Order Defendants to rescind the discriminatory termination of Plaintiff;

G.  Issue injunctive relief returning Plaintiff to her position;

H.  Award Plaintiff full and reasonable attorneys' fees and costs for this action;

I.  Award Plaintiff pre- and post-judgment interest as may be permitted by law;

J.  Issue a writ of mandamus; and

K.  Award any other such relief that this Court deems appropriate.

Date: August 5, 2026                    Respectfully submitted,

                                        /s/ Cathy A. Harris
                                        Cathy A. Harris (D.C. Bar No. 467206)
                                        CORREIA & PUTH, PLLC
                                        1400 16th Street, NW, Suite 450
                                        Washington, D.C.  20036
                                        Tel: (202) 602-6500

19

charris@correiaputh.com

/s/ Jeremy D. Wright
Kerrie D. Riggs (D.C. Bar No. 995784)
Jeremy D. Wright (D.C. Bar No. 483297)
 (Pro hac vice forthcoming)
KATOR, PARKS, WEISER & WRIGHT, P.L.L.C.
1150 Connecticut Ave., N.W., Suite 705
Washington, D.C. 20036
Phone: (202) 898-4800
Fax: (202) 289-1389
kriggs@katorparks.com
jwright@katorparks.com

*Attorneys for Plaintiff*